## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES DAVIS, | ) | 3:21-CV-00648 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NURSE SUPERVISOR, TAWANA | ) | |
| FURTICK, et al., | ) | August 25, 2022 |
| *Defendant*. | | |

## RULING ON MOTION TO DISMISS

The *pro se* plaintiff, James Davis ("Plaintiff"), is an individual who was formerly in the custody of the Connecticut Department of Correction ("DOC") and who is proceeding *in forma pauperis*. He filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against Nurse Supervisor Tawana Furtick, Health Service Review ("HSR") Grievance Coordinator Rose Walker, Utilization Review Tracker Heidi Goode, Connecticut DOC Prompt Care, and Dental Director Dr. Cuevas in their individual and official capacities. Compl., ECF No. 1. After initial review, the Court permitted Plaintiff to proceed on his Eighth Amendment claims against Defendants Furtick, Walker, Goode, and Cuevas. ECF No. 9.[1]

Defendants have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) (the "Motion"), arguing that Plaintiff has failed to state a claim upon which relief can be granted. ECF No. 34. After several requests for more time, Plaintiff has responded to the Motion, arguing that he has adequately stated claims upon which relief can be granted. ECF No. 51. For the following reasons, the motion to dismiss will be granted in part and denied in part.

---

[1] The Court dismissed Plaintiff's claims against Connecticut DOC Prompt Care. *See* ECF No. 9.

## I.     FACTUAL BACKGROUND

For purposes of the Motion, the Court considers all of Plaintiff's allegations in his complaint to be true.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The Court also considers facts reflected by Plaintiff's exhibits attached to the complaint.   *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (for purposes of a 12(b)(6) motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" and documents on which the complaint "relies heavily," which can render the documents "integral" to the complaint); ECF No. 1-1.

Plaintiff was formerly incarcerated at MacDougall-Walker Correctional Institution ("MacDougall").   ECF No. 1 ¶ 3.   Defendant Furtick is the Clinical Health Nurses Supervisor at McDougall; she is responsible for ensuring the provision of medical care to prisoners and supervising health care providers, doctors, and any Health Service Review Coordinators.   *Id.* ¶ 4. Defendant Goode is the Utilization Review tracker at McDougall; in this role, she is responsible for coordinating inmate visits with medical specialists outside of MacDougall.   *Id.* ¶ 5. Defendant Walker is a Health Service Review Coordinator at MacDougall responsible for reviewing Health Service Reviews, which are administrative remedies designed to address medical care issues.   *Id.* ¶ 6.

Plaintiff alleges that while he was incarcerated at MacDougall, he did not receive necessary medical attention for his right ear, which must be cleaned out every four to six months by an Ear Nose and Throat ("ENT") doctor due to complications from ear surgery in 1985.   *Id.* ¶¶ 9-13.   As documented in his health records, Plaintiff did not see an ENT for more than a year.   *Id.* ¶ 15. His ear felt as if it was infected, was painful, and had an odorous discharge; he informed

Defendants Goode and Walker about these symptoms and wrote requests for medical assistance to Defendant Furtick. *Id.* ¶¶ 16-20, 30. He also filed HSR grievances requesting to be seen by an ENT doctor, but was not seen. *Id.* ¶¶ 21-26. According to Plaintiff, Defendants Goode and Walker failed to have Plaintiff sent to an ENT specialist; Defendant Walker failed to process his HSRs and communicate information to the appropriate individuals so that he could receive care for his ear; and Defendant Furtick failed to ensure he received timely adequate treatment. *Id.* ¶¶ 32-35, 118-121.

Plaintiff also has chronic obstructive pulmonary disease ("COPD")[2] and asthma. *Id.* ¶¶ 53-55. In January 2020, Plaintiff saw medical provider Stark about his asthma and requested extra exercise and recreation in order to treat the condition. *Id*. ¶ 60. Stark referred his request for extra exercise and recreation as a treatment for his asthma to Defendant Furtick. *Id.* ¶ 61. After Defendant Furtick did not respond to Stark's communication, Plaintiff filed an HSR grieving the lack of response. *Id.* ¶¶ 64-65. Plaintiff's request for exercise was eventually rejected, and Plaintiff was allegedly referred to, but never saw, a doctor for his asthma. *Id.* ¶¶ 66-67; ECF No. 1-1 at 41.

On March 30, 2020, Plaintiff wrote to Defendant Furtick about his need for a medication called Wixela[3] to treat his COPD and asthma. ECF No. 1 ¶ 68. The next day, Defendant Furtick responded that his Wixela was ordered, but Plaintiff did not receive his Wixela for two months

---

[2] COPD "refers to a group of diseases that cause airflow blockage and breathing-related problems." *See* https://www.cdc.gov/copd/index.html#:~:text=Chronic%20obstructive%20pulmonary%20disease%2C%20or,Americans%20who%20have%20this%20disease.
[3] Wixela Inhub is used to treat symptoms of asthma and COPD. https://www.drugs.com/pro/wixela-inhub.html. It is the first approved generic version of Advair Dsikus and is the therapeutic equivalent to Advair Diskus. https://www.drugs.com/medical-answers/wixela-inhub-advair-diskus-3510619/.

despite informing Defendant Furtick and RN Shanya in April that the lack of medication was causing wheezing, coughing, difficulty sleeping, and physical pain.   *Id.* ¶¶ 69-78.

On May 4, 2020, Plaintiff filed an HSR, complaining about not having received his Wixela. *Id.* ¶ 73.   Past delays in receiving Advair, his prior asthma medication, had caused his symptoms to worsen, affecting his ability to sleep.   *Id.* ¶¶ 76-77.   Defendant Furtick had treated him during this delay in receiving Advair, and was thus aware of the problems that could result from the failure to timely receive his medication.   *Id.* ¶¶ 85.   The delay in receiving his Wixela caused his asthma to "spiral out of control."   *Id.* ¶ 79.

After he received his Wixela on May 30 or June 1, 2020, Plaintiff still had to go to the medical unit on June 22, 2020, due to wheezing, coughing, spitting, and insomnia; he was given Mucinex, which did not help.   *Id.* ¶ 80.   On June 26, 2020, he again went to the medical unit complaining of wheezing, coughing, mucus build-up and insomnia; at that time, he was provided with a breathing treatment and referred to a doctor.   *Id.* ¶ 81.   After Dr. Lucas examined him and prescribed Prednisone, Plaintiff's condition improved mildly.   *Id.* ¶¶ 82-83.   After a second round of Prednisone, he felt better and kept his symptoms at bay by continuing to take Wixela. *Id.* ¶¶ 83-84.

Separately, in seeking treatment for an unrelated dental issue in the spring 2019, Plaintiff wrote to the dental unit complaining about tooth pain.   *Id.* ¶ 101.   At a 2019 appointment, Defendant Cuevas, the Dental Director, noted Plaintiff's cavities and told him that he would be called back to have the cavities filled.   *Id.* ¶ 103.   On May 13, 2019, Defendant Cuevas filled one cavity but told Plaintiff he would call him back to fill a second cavity; Defendant Cuevas never called Plaintiff back to have his second cavity filled.   *Id*. ¶¶ 104-105.   Plaintiff wrote to

4

Defendant Cuevas on October 4, 2019, to remind him that he needed his "painful cavity filled." *Id.* ¶ 106.   He received no response.   *Id.* ¶ 107.

Plaintiff sent an inmate request to Defendant Furtick on November 26, 2019, informing her that his "painful cavity" was never filled.   *Id.* ¶ 108.   On December 19, 2019, he filed an HSR explaining that his inmate request to Defendant Furtick had not been answered, that he was supposed to see a dentist a long time ago, and that he needed to see a dentist for a cavity and other tooth pain.   *Id.* ¶¶ 106, 108–110; ECF No. 1-1 at 45, 47.   On January 6, 2020, Defendant Walker returned Plaintiff's HSR without disposition because Plaintiff's prior inmate request was not addressed to the dental department.   ECF No. 1-1 at 45.   She advised him to "write back to dental."   *Id.*

On January 28, 2020, Plaintiff wrote another HSR, which stated:

Handwritten copy of request (CN 9601) attached – its dated 1/6/20 and isn't responded to like the previous request[s] (11/26/19 + 10/4/20219) sent to Dr. Cuevas & the HSR in relation thereof sent 12/19/19 that ordered me to write another futile request (CN 9601— dated 1/6/20).

I need to be seen to have my teeth repaired and cleaned.   Yesterday, one of my teeth on the bottom broke and now it—like the cavity that was supposed to be filled—is painful. Can't eat hard food on the left side (My left) and when sugar + cold liquid hits the tooth, the pain is amplified; writing a request about the latter, now (1/28/20) I request to be seen immediately, without further delay to curtail the pain I'm experiencing daily.   Thank you.

ECF No. 1-1 at 49; *see also* ECF No. 1 ¶¶ 111-113.

Plaintiff's broken tooth was fixed by Dr. Jane Doe on February 11, 2020.   ECF No. 1 ¶ 114.

Plaintiff's HSR dated January 28, 2020, was denied by Defendant Cuevas on February 26, 2020, because Plaintiff was "seen 11 Feb 2020 and treated."   ECF No. 1-1 at 49. Plaintiff filed an appeal of that denial on March 1, 2020, stating that his "tooth/teeth that needs cavity [filled] is

5

very painful" and had "never got filled—it's going on a year."  *Id.* at 51.   The Level-2 Appeal grievance reviewer rejected his appeal with the following explanation: "Remedy requested to be seen immediately and assessed and you were—your appeal is not consistent with your stated remedy which appears to be upheld.   Resubmit."   *Id.*

Plaintiff alleges that his painful cavity was not filled until August 4, 2020, when Dr. Jane Doe put in a temporary sedative filling and advised him that he would be called back for further repair.   ECF No. 1 at 26, Count V, ¶¶ 2-3.   He alleges that his tooth still needs to be filled because a sedative filling is only temporary.   *Id.* at 26 ¶ 3.

## II.      STANDARD OF REVIEW

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Id.* (quoting *Twombly*, 550 U.S. at 557).

When reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor."   *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).   Despite this, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," are not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are still required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks and citations omitted). The fact that the Court's Initial Review Order permitted one or more claims to proceed past initial review "does not preclude a motion to dismiss under Rule 12(b)(6) and a subsequent finding by the court, after entertaining such a motion, that the claim fails to satisfy the plausibility standard." *King Knowledge Born Allah v. Semple*, No. 3:18-cv-887 (KAD), 2019 WL 109002, at *5 (D. Conn. Jan. 4, 2019); *Smalls v. Wright*, No. 3:16-cv-2089 (JCH), 2017 WL 3477070, at *4 (D. Conn. Aug. 11, 2017) (holding that a court may reconsider decision made in an initial review order allowing a claim to proceed, because the court may not be able to make a determination that a claim should be dismissed without the "benefit of an adversarial presentation") (internal citation omitted).

## III.    DISCUSSION

The Court's Initial Review Order allowed Plaintiff to proceed as to the following Eighth Amendment claims: Defendant Furtick's failure to ensure that he receive timely medical treatment for his ear by an ENT and for failing to treat his asthma and COPD conditions; Defendant Goode's failure to have him sent to an ENT to have his ear examined and cleaned; Defendant Walker's failure to process his HSRs so that he could receive treatment for his ear, respiratory, and dental needs; and Defendant Cuevas' failure to fill his cavities.   ECF No. 9.   In their motion to dismiss, Defendants maintain that Plaintiff failed to allege: (1) a serious medical need based on his asthma or that the delay in treatment for his asthma rose to the level of a constitutional violation; (2) facts

suggesting that Defendants Furtick, Goode, or Walker acted with deliberate indifference to Plaintiff's need to see an ENT;[4] and (3) facts suggesting that Defendant Cuevas acted with deliberate indifference to Plaintiff's dental needs.   ECF No. 34-1.   Plaintiff was granted multiple extensions of his deadline to respond to Defendants' motion.   *See* ECF Nos. 40, 43, 48.   Plaintiff opposes the motion to dismiss.   ECF No. 51.

A.   Legal Standard

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners," whether "manifested by prison doctors in response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."   *Estelle v. Gamble,* 429 U.S. 97, 104–105 (1976) (internal quotation marks and citation omitted).   However, "not every lapse in medical care is a constitutional wrong."   *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).   Instead, courts have devised a two-pronged test for deliberate indifference containing objective and subjective components.

To satisfy the objective component, a plaintiff must show that the conditions to which he was subjected: (1) "pose[d] an unreasonable risk of serious damage to his health" and (2) that the alleged deprivation of adequate medical care was "sufficiently serious."   *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017); *Salahuddin*, 467 F.3d at 279-280; *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).   In conducting this analysis, the court must "examine how the offending conduct

---

[4] Defendants also assert that Plaintiff has set forth no allegations concerning a denial of or delay in treatment for his COPD.   *Id.* at 7.   However, Plaintiff's allegations suggest that the symptoms of both his asthma and COPD were exacerbated by the delay in receiving the Wixela medication, *see* ECF No. 1 ¶¶ 68-70.   As previously noted, Wixela can treat both COPD and asthma.   Viewing the facts in the light most favorable to Plaintiff, the Court will assume the allegations related to asthma also apply to Plaintiff's COPD.

is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280.

If a plaintiff makes this showing, he must then show that the defendant acted with subjective recklessness—that is, the defendant knew of and disregarded "an excessive risk" to plaintiff's health or safety. *Darnell*, 849 F.3d at 32; *Salahuddin*, 467 F.3d at 280. To know of and disregard an excessive risk to the plaintiff's health or safety, the defendant must be actually "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the defendant] must also draw the inference." *Darnell*, 849 F.3d at 32 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *Salahuddin*, 467 F.3d at 281 (noting that the "charged official must be subjectively aware that his conduct creates [substantial] risk [of harm]").

"In cases where a prisoner alleges a delay in medical treatment, courts examine both the seriousness of the prisoner's medical conditions and the harm caused by any unreasonable delay." *Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (citing *Salahuddin*, 467 F.3d at 280). The court's objective "serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter,* 316 F.3d 178, 186 (2d Cir. 2003). The court should consider the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Id.* "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* at 187; *see also Bilal v. White*, 494 F. App'x 143, 145–46 (2d Cir. 2012) ("Even assuming that Bilal's conditions could produce serious complications if neglected over sufficient time, there is no evidence that Bilal's conditions

worsened over the hours of delay here[.]") (internal citation omitted).

        B.      <u>Delayed Medical Treatment For Asthma and COPD</u>

For the reasons described below, the Court denies the motion to dismiss Plaintiff's Eighth Amendment claim concerning delayed medical treatment for his asthma and COPD as it pertains to Defendant Furtick, but grants the motion as it pertains to Defendant Walker.

Initially, drawing all reasonable inferences in his favor, Plaintiff has sufficiently alleged the seriousness of his asthma and COPD and that the delay in receiving his medication for these conditions was both unreasonable and caused him harm.   While it is true that courts in this circuit have found "the fact that an inmate is asthmatic does not, by definition, constitute a serious medical need," *see Paschal-Barros v. Balatka*, No. 3:18-CV-2021 (VLB), 2020 WL 5230994, at *5 (D. Conn. Sept. 1, 2020), *aff'd on other grounds*, No. 20-3150-CV, 2021 WL 5268000 (2d Cir. Nov. 12, 2021) (citing cases), Plaintiff here alleges far more than just that he was asthmatic.   Rather, he alleges that he suffered a prolonged period of painful symptoms without treatment, and that it took more than a month, two rounds of Prednisone, and restarting his Wixela treatment before he began to feel better.   ECF No. 1 ¶¶ 69-79, 82-84.   He further alleges that the delay in receiving his Wixela caused his asthma to "spiral out of control."   *Id.* ¶ 79.   Thus, construing the complaint in the light most favorable to Plaintiff, his allegations suffice to satisfy the objective component of an Eighth Amendment violation, by showing a sufficiently serious deprivation of medical care that posed a significant risk to Plaintiff's health.   *See Lewis v. Clarkstown Police Dep't, No.* 11-CV-2487 ER, 2014 WL 1364934, at *7 (S.D.N.Y. Mar. 31, 2014) (ignoring active symptoms caused by asthma can satisfy the objective prong of deliberate indifference analysis).

Relevant to the subjective component of the Eighth Amendment analysis, a defendant must

have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin,* 467 F.3d at 280; *Amaker v. Coombe,* No. 96 Civ. 1622, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002) ("A delay in medical treatment does not by itself violate a prisoner's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment."). "[A]wareness may be proven from the very fact that the risk was obvious." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quotation marks omitted).

In this instance, Plaintiff alleges that he informed Defendant Furtick on April 6, 2020, about his difficulty breathing without his Wixela, ECF No. 1 ¶ 70.   He further alleges that Defendant Furtick has treated him in the past and knew that he had experienced complications, including difficulty breathing due to asthma, when his condition was untreated for a sustained period of time. *Id.* ¶¶ 85-86.   Thus, Plaintiff has sufficiently alleged facts raising an inference that Defendant Furtick was aware of the difficulties he would experience as a result of his delayed medication. Further, drawing all inferences in favor of Plaintiff, the Court considers Plaintiff's allegations sufficient to suggest that Defendant Furtick had the ability to ensure that Plaintiff received his treatment, but failed to take follow-up steps to do so.   Thus, the allegations satisfy the subjective prong as it relates to Defendant Furtick, as Plaintiff has adequately alleged that Furtick was actually aware that Plaintiff would suffer serious harm absent action to correct the situation.

As it pertains to Defendant Walker, however, Plaintiff's allegations do not satisfy the subjective prong of the analysis.   Plaintiff's complaint related to Walker deals with the processing

of his HSRs.   *See* ECF No. 1 ¶¶ 66-67, 119-120, p. 22; ECF No. 1-1 at 41; Pl.'s Opp. at 4.   But an inmate has no constitutional right to have his grievances addressed or to receive what he considers to be a proper response.   *See Hinton v. Pearson*, No. 3:21-CV-863 (MPS), 2021 WL 4521994, at *8 (D. Conn. Oct. 4, 2021) (citing *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018)).   Plaintiff has not alleged facts suggesting that Walker processed his grievances with any awareness that her conduct would result in a treatment delay for his difficulties with wheezing, coughing, mucus build-up, insomnia, and out-of-control asthma.   *See Mattison v. Bushey-Calley,* No. 20-1120-PR, 2022 WL 2275851, at *2 (2d Cir. June 23, 2022) (concluding that the plaintiff failed to show evidence that medical provider, who reviewed the plaintiff's grievances and medical records but did not examine him, was actually aware of and disregarded a substantial dental risk). Nor is there any indication that she could have provided him with more timely treatment or provision of his medication.   *Warwick v. Doe*, No. 3:20-CV-227 (JAM), 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (noting that allegations that did not indicate a defendant had, but failed to exercise, the power to provide more timely medical treatment did not satisfy the subjective prong of a deliberate indifference analysis).   At most, Plaintiff's allegations about Walker's failures with regard to processing his medical grievances amount to negligence.   *Id.* at *6 (noting that negligence of prison personnel in discharging their duties does not constitute deliberate indifference).

Accordingly, the Court GRANTS Defendants' motion as it relates to Defendant Walker's actions related to Plaintiff's asthma and COPD conditions, but DENIES the motion as it relates to Defendant Furtick's actions related to these respiratory conditions.

C.    Delayed ENT Treatment

Plaintiff also alleges that he was not seen by an ENT for more than a year, although he had an ear condition that required an ENT to clean his ear every four to six months.   ECF No. 1 ¶¶ 9–15.   Defendants do not challenge Plaintiff's Eighth Amendment claim relevant to the objective component.   Instead, Defendants argue Plaintiff has not sufficiently alleged facts suggesting that Defendants Furtick, Goode, or Walker delayed his medical treatment for his ear with the requisite culpable state of mind, thus failing to satisfy the subjective component.   ECF No. 34-1 at 7.   The Court agrees.

Plaintiff complains that Defendants Furtick, Goode, and Walker failed to provide him with an ENT appointment, although he wrote to them about his need to have one.   *See* ECF No. 1 ¶¶ 20-26.   Plaintiff's Exhibit 4, an Inmate Request Form and Administrative Remedy Form, shows that Defendant Walker responded to Plaintiff's inmate request sent to Defendant Furtick by advising him that his request for an ENT appointment had been "submitted."   ECF No. 1-1, at 19. In response to his HSR, she advised him that his request for an ENT appointment was submitted to the Utilization Review Committee ("URC"), that he should "file with the URC," and that he had been placed on the "provider list" and could "sign up for prompt care" for his "current[] issues."   *Id.*

To the extent that Plaintiff disagrees with Defendant Walker's decision to refer him to Prompt Care, this challenge represents his disagreement with the level of care that he believes should have been afforded to him at the time.   But "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim" and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to

13

an Eighth Amendment violation."  *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Oh v. Saprano*, No. 3:20-CV-237 (SRU), 2020 WL 4339476, at *5 (D. Conn. July 27, 2020) ("it is well settled that an inmate's unheeded preference for treatment does not create a constitutional claim.").

Moreover, a plaintiff must show that the defendant acted or failed to act with "culpable recklessness," or "a conscious disregard of a substantial risk of serious harm."  *Morales-Rojas v. Ruiz*, No. 3:17-cv-1434 (MPS), 2019 WL 1025245, at *7 (D. Conn. Mar. 4, 2019) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).   Plaintiff's allegations do not suggest that Defendant Walker's referral to Prompt Care for his then-current issues while his URC request for an ENT appointment was pending was inadequate or did not derive from sound medical judgment.   Additionally, even if Defendants Walker, Goode, or Furtick failed in their duty to process his grievance properly, such conduct amounts only to negligence, which is not sufficient to support a claim of deliberate indifference. *See Warwick*, 2020 WL 2768804, at *6.

Accordingly, the Court will grant the motion to dismiss Plaintiff's Eighth Amendment claim arising from alleged deliberate indifference to his serious need for an ENT appointment.

D.   <u>Dental Needs</u>

Defendants argue that Plaintiff's Eighth Amendment claim regarding his dental needs is not plausible because (1) Plaintiff does not allege that Defendant Cuevas refused to fill his cavity after he received dental treatment on February 11, 2020; and (2) Plaintiff's complaint fails to reflect that Defendant Cuevas acted with a culpable state of mind.   The Court disagrees.

Construed in the light most favorable to Plaintiff, the complaint alleges that Plaintiff experienced a delay in having his painful cavity filled for a period of more than a year.   Factual

14

questions remain as to the circumstances surrounding the filling of Plaintiff's cavity but, for purposes of the present motion, Plaintiff has sufficiently alleged that Defendant Cuevas's actions posed an unreasonable risk of damage to his health that was sufficiently serious to satisfy the objective component of the Eighth Amendment analysis for initial pleading purposes. *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) ("a tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction").

Relevant to the subjective component, Plaintiff has adequately alleged that Defendant Cuevas knew about Plaintiff's cavity, provided him with other dental care, and denied his grievances requesting additional care for his painful cavity to be filled. *See* ECF No. 1 ¶¶ 102-109; ECF No. 1-1 at 47-49. The facts suggest that Defendant Cuevas had the ability to provide Plaintiff with treatment for his painful tooth sooner than August 4, 2020, but, instead, he denied Plaintiff's HSR request based on his assessment that Plaintiff had sufficiently received treatment on February 11, 2020. *See* ECF No. 1-1 at 49. Thus, Plaintiff has sufficiently alleged that Defendant Cuevas acted with a conscious disregard of his serious need to have his painful cavity filled. *See Leniart v. Borchet*, No. 3:20CV1098 (KAD), 2020 WL 5765607, at *6 (D. Conn. Sept. 28, 2020) (noting that inmate's allegations that dental assistant failed to provide him with an appointment in accordance with dentist's instructions that she do so as soon as possible raised a plausible inference that she acted with more than negligence). Defendants' motion to dismiss the Eighth Amendment claim against Defendant Cuevas must be denied.

Defendants do not expressly challenge the Eighth Amendment dental indifference claim against Defendant Walker, so the Court need not address it here, and that claim will proceed.

15

IV.     CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Defendants' motion, as it relates to the Eighth Amendment claims against Walker, Furtick, and Goode relevant to Plaintiff's need for an ENT appointment, and against Walker for deliberate indifference to Plaintiff's need for asthma and COPD treatment is GRANTED.  As no claims remain against Defendant Goode, she is dismissed from this case entirely.  Defendants' motion, as it relates to the Eighth Amendment claims against Furtick for her deliberate indifference to Plaintiff's need for treatment for his asthma and COPD and against Cuevas and Walker for deliberate indifference to Plaintiff's serious need to have his cavity filled, is DENIED.

In light of this ruling, the stay of discovery ordered on April 5, 2022, at ECF No. 46 is hereby lifted.   Defendants shall respond to the pending discovery identified in their motion to stay discovery (ECF No. 45-1) within 45 days of this ruling.

SO ORDERED at Hartford, Connecticut, this 25th day of August, 2022.


  /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

16