UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OMAR J. MILLER, a/k/a, JAMES DAVIS, | ) | 3:21-CV-648 (SVN) |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TWANA FURTICK, ROSE WALKER AND DR. CUEVAS, | ) ) | |
|     *Defendants*. | ) | February 29, 2024 |

**RULING GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Pro se* Plaintiff Omar Miller, formerly incarcerated in the custody of the Connecticut Department of Correction ("DOC"), has brought this civil rights complaint pursuant to 42 U.S.C. § 1983 against Nurse Supervisor Tawana Furtick, Health Service Review ("HSR") Grievance Coordinator Rose Walker, Utilization Review Tracker Heidi Goode, Connecticut DOC Prompt Care, and Dental Director Dr. Cuevas in their individual and official capacities. Compl., ECF No. 1. After initial review, the Court permitted Plaintiff to proceed on Eighth Amendment claims against Defendants Furtick, Walker, Goode, and Dr. Cuevas. ECF No. 9.[1] After granting in part and denying in part the remaining Defendants' motion to dismiss, the Court allowed Plaintiff to pursue claims against (1) Furtick for her alleged deliberate indifference to Plaintiff's need for treatment for his asthma and COPD and (2) against Dr. Cuevas and Walker for their alleged deliberate indifference to his dental care. ECF No. 57 at 16.

Defendants now move for summary judgment, arguing that Plaintiff cannot prevail on the merits of his Eighth Amendment claims, or alternatively, that Defendants are entitled to qualified

---

[1] The Court dismissed Plaintiff's claims against Connecticut DOC Prompt Care. *See* ECF No. 9.

1

immunity. ECF No. 67. For the reasons that follow, the Court grants Defendants' motion for summary judgment.

## I.     FACTUAL BACKGROUND[2]

The following factual background is taken from the complaint,[3] the parties' statements of facts, and the underlying evidentiary record.[4]

Plaintiff is a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"). Defs.' Local Rule ("L.R.") 56(a)1 St., ECF No. 67-2 ¶¶ 1–3. At all times relevant to this action, Plaintiff was incarcerated at MacDougall-Walker Correctional Institution ("MacDougall"). *Id.* ¶ 4; *see* Compl. ¶ 3. Plaintiff was released from DOC custody in June 2021. Defs. L.R. 56(a)1 St. ¶ 23.

---

[2] Generally, the Court cites only to the relevant paragraph in Defendants' Local Rule 56(a)1 Statement where the facts are not disputed.

[3] The Court's review of the record includes the allegations of the complaint. *See Jordan v. LaFrance*, No. 3:18-cv-1541 (MPS), 2019 WL 5064692, at *3 (D. Conn. Oct. 9, 2019) (a "verified complaint is to be treated as an affidavit for summary judgment purposes") (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

[4] Defendants have certified that they sent Plaintiff a Notice to *Pro Se* Litigant in compliance with Local Rule of Civil Procedure 56(b) to inform him that judgment may be entered against him on his claims if he did not "file papers as required by Rule 56 of the Federal Rules of Civil Procedure and Rule 56 of the Local Rules of Civil Procedure" and if the defendants' motion shows that Defendants are entitled to entry of judgment as a matter of law. Notice to *Pro Se* Litigant, ECF No. 67-6 at 1. He was therein informed that he should review "very carefully" the copies of the attached rules. *Id.* Plaintiff filed a response to the motion for summary judgment, ECF No. 81, and filed a document that the Court construes as Plaintiff's Local Rule 56(a)2 statement. *See* Pl.'s L.R. 56(a)2 St., ECF No. 81-16.

Local Rule 56(a)(1) provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." And Local Rule 56(a)3 provides that a party's "[f]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions, *including, when the movant fails to comply, an order denying the motion for summary judgment . . . . .*" (emphasis added). Thus, to the extent a plaintiff's Local Rule 56(a)2 statement does not comply with Local Rule 56(a), the Court may consider a defendant's statement of fact to be true if supported by the evidence. *See Wu v. Nat'l Geospatial Intel. Agency*, No. 3:14-CV-1603 (DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting that "*pro se* parties are not excused from abiding by the Federal Rules of Civil Procedure.") (quoting *Collins v. Experian Credit Reporting*, No. 3:04-CV-1905 (MRK), 2006 WL 2850411, at *1 (D. Conn. Oct. 3, 2006)).

A.      Plaintiff's Dental Care

On April 3, 2019, Plaintiff saw a dental hygienist for a dental cleaning, during which the hygienist identified a potential issue with tooth #14, requiring a follow-up. *Id.* ¶ 5. On April 23, 2019, non-party Dr. Stephanie Katz saw Plaintiff for his follow-up dental examination. *Id.* ¶ 6. She observed a large cavity on tooth #14, for which recommended restoration, and she changed Plaintiff's dental classification to "Class 3" for an urgent dental need. *Id.* ¶¶ 6–7. Dr. Katz also observed that Plaintiff's tooth #29 had lost restoration but did not discern any decay, and recommended that a new composite be applied to this tooth. *Id.* ¶ 6. On May 8, 2019, Plaintiff did not appear for his appointment with Dr. Cuevas to treat teeth #14 and #29. *Id.* ¶ 8.

On May 13, 2019, Dr. Cuevas repaired Plaintiff's tooth #14. *Id.* ¶ 9. Dr. Cuevas observed tooth #29, but determined that its condition was not severe and did not require immediate attention. *Id.* After he repaired tooth #14, Dr. Cuevas changed Plaintiff's dental classification to "Class 2" for routine dental care that would not become emergent within the next twelve months. *Id.* ¶ 10. Plaintiff disagrees that Dr. Cuevas did not assess Plaintiff's teeth as requiring immediate attention; he claims that multiple teeth on the right side of his mouth required emergent care and that Dr. Cuevas told him he would call him back soon to repair the sensitive teeth. Pl.'s L.R. 56(a)2 St. ¶¶ 9–10.

Plaintiff filed a grievance related to his dental complaints on December 19, 2019. Pl.'s Ex. 3, ECF 81-4 at 3. In a response dated January 5, 2020, Grievance Coordinator Walker returned Plaintiff's Health Services Review ("HSR") without disposition because his prior inmate request form (CN 9601) had been addressed to a Nursing Supervisor, not to the dental department. *Id.* at 4. She advised him to "write back to dental." *Id.*

3

On February 11, 2020, Dr. Gloria Perry repaired Plaintiff's tooth #19, which Plaintiff had complained had broken. Defs.' L.R. 56(a)1 St. ¶ 11. Dr. Perry observed that tooth #29 was "sensitive," but did not consider the tooth to require immediate attention. *Id.* Tooth #29 was marked for later treatment. *Id.*

As a result of the COVID-19 pandemic, in March 2020, all elective dental procedures within DOC were suspended. *Id.* ¶ 12. DOC did not resume routine dental treatments or the use of drills for fillings until late November or December 2020. Defs.' Ex. A, Dr. Cuevas Decl., ECF No. 67-3 ¶ 13.

On August 2, 2020, Plaintiff wrote an inmate request seeking treatment for "painful sensitive teeth on both sides," a "lingering" cavity, and teeth cleaning. Defs.' L.R. 56(a)1 St. ¶ 13. On August 4, 2020, Dr. Perry evaluated Plaintiff in response to his request to have his "sensitive teeth checked." *Id.* ¶ 14. Dr. Perry observed tooth abrasions on tooth #28 and tooth #29. *Id.* Dr. Perry treated Plaintiff by placing temporary or sedative fillings—which are sometimes used as alternatives to drilling larger holes for a permanent filling—on tooth #28 and tooth #29. *Id.* ¶¶ 14–15 (citing Dr. Cuevas Decl. ¶ 14 n.3).

On October 2, 2020, Dr. Perry evaluated Plaintiff again in response to his request to have his "painful teeth" checked. Defs. L.R. 56(a)1 St. ¶ 16. Dr. Perry examined Plaintiff and obtained x-rays of the right side of his mouth. *Id.* Dr. Perry reassured Plaintiff that he did not need to be concerned about the condition of his sedative fillings. *Id.*

At Plaintiff's final relevant dental cleaning on April 21, 2021, no notable findings were observed. *Id.* ¶ 17.

B.    Plaintiff's Asthma and COPD

Plaintiff alleges that he has asthma and COPD.  Compl. ¶¶ 53, 57.  He claims to have written to Nursing Supervisor Furtick on March 30, 2020, about his need for Wixela and Albuterol to treat his COPD and asthma, and that the next day Furtick responded that his Wixela was ordered. *Id.* ¶¶ 68–69. [5]  He alleges that he submitted a second request to Furtick for the Wixela on April 6, 2020, as Plaintiff had not yet received his prescription.  *Id.* ¶ 70.  He further claims that he requested a refill of his asthma medications from a non-party nurse on April 17, 2020.  *Id.* ¶ 72.  Plaintiff allegedly received the Wixela prescription on May 30 or June 1, 2020, but the delay caused his asthma and COPD to spiral out of control.  *Id.* ¶¶ 78–79.

Nursing Supervisor Furtick's professional duties did not include refilling inmate prescriptions.  Defs.' L.R. 56(a)1 St. ¶ 19.  She also had no clinical interactions with Plaintiff between January 2019 and his release from custody in June 2021.  *Id.* ¶ 21.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

---

[5] The record does not support Plaintiff's claim that Nursing Supervisor Furtick responded to his March 30, 2020, inmate request.  This inmate request shows the unsigned response—"All Meds ordered on 3/21/20"—but it contains no indication that Nursing Supervisor Furtick *in particular* reviewed or responded to the inmate request.  *See* Defs.' Ex. B, Plaintiff's Sealed Medical Records, ECF No. 66 at 35.  While Plaintiff has submitted a medical record concerning a prescription refill order dated March 30, 2020, the record does not mention Furtick.  Pl.'s Ex. 4, ECF 81-5 at 3.

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex.*, 477 U.S. at 324)). The non-moving party, to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 296 (2d Cir. 2020)). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Moreover, the Court bears in mind that a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

### III.   DISCUSSION

For the reasons that follow, the Court grants summary judgment in Defendants' favor as to all of Plaintiff's Eighth Amendment claims.

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners,' which includes needs for mental health care." *Spavone v. N.Y. Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal citations omitted) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).  First, the alleged deprivation "must be, in objective terms, 'sufficiently serious.'"  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "Second, the charged official must act with a sufficiently culpable state of mind." *Id.*

Under the objective prong, the inmate's medical need or condition must be "a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).  Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find it important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (cleaned up) (quoting *McGuckin v. Smith*, 974 F.3d 1050, 1059–60 (9th Cir. 1992)). Moreover, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

To satisfy the second subjective prong, a prison official or medical staff member must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). "Mere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (cleaned up) (quoting *Hathaway*, 99 F.3d at 553)). Further, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Chance*, 143 F.3d at 703.

        A.      <u>Deliberate Indifference to Dental Needs</u>

Even assuming Plaintiff can satisfy the objective element for his dental conditions, the evidentiary record raises no inference that either Dr. Cuevas or Grievance Coordinator Walker acted with deliberate indifference to his dental needs. The medical records reflect that Plaintiff was afforded numerous opportunities to benefit from dental treatment and did in fact receive such treatment when medically necessary.

        *1.*      *Dental Treatment*

First, the record before the Court demonstrates that Dr. Cuevas (and other dental providers at MacDougall) effectively addressed Plaintiff's dental needs. It is undisputed that Plaintiff had two appointments with Dr. Cuevas in May 2019. Defs.' L.R. 56(a)1 St. ¶¶ 8–10. Dr. Cuevas attempted to treat Plaintiff on May 8, 2019, approximately two weeks after Plaintiff was diagnosed on April 23, 2019, with a large cavity in tooth #14, but Plaintiff did not show up to the appointment.

8

*Id.* ¶ 8. Dr. Cuevas ultimately repaired Plaintiff's tooth #14 on May 13, 2019. *Id.* ¶ 9. The medical records further show that Dr. Cuevas assessed Plaintiff's tooth #29, determined it did not require immediate attention, and changed Plaintiff's dental classification to a lower priority. ECF No. 66 at 52–53; *see also* ECF No. 67-3 ¶ 10. Thereafter, Dr. Perry evaluated Plaintiff's dental needs on February 11, 2020, repaired his broken tooth #19, and likewise assessed that tooth #29 was sensitive but did not require immediate attention. ECF No. 66 at 45. Then, despite the limitations imposed on dental treatment in response to the COVID pandemic, Plaintiff still received attention from DOC dental staff in August and October 2020 after he complained of sensitive or painful teeth. Defs.' L.R.56(a)1 St. ¶¶ 12–16.

Plaintiff claims that he had multiple teeth that required emergent care and that he complained to Dr. Cuevas about his dental pain for those teeth on May 13, 2019. Pl.'s Ex. 18, Pl. decl., ECF No. 81-19 ¶ 4. But Plaintiff's belief that he "should have been seen sooner or more frequently than he was does not create a deprivation of constitutional dimension." *Perry v. Furey*, No. 3:18-CV-1709 (KAD), 2020 WL 59941, at *6 (D. Conn. Jan. 6, 2020). To the extent that Plaintiff believes that Dr. Cuevas should have provided him with immediate treatment for his tooth #29, overlooked other dental conditions, and should not have changed his dental classification, Plaintiff's complaints boil down to his disagreement with Dr. Cuevas's medical judgment. But it is well established that "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (citing *Estelle*, 429 U.S. at 106–07)).

However, a medical provider may act with deliberate indifference by consciously providing an inmate with "an easier and less efficacious" treatment plan, particularly if the provider does so because of ulterior motives, such as improper monetary incentive. *Chance*, 143

9

F.3d at 703–04 (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)); *see also Braham v. Perelmuter*, No. 3:15-CV-1094 (JCH), 2017 WL 3222532, at *17 (D. Conn. July 28, 2017) (denying motion for summary judgment because a reasonable juror could infer that the defendant-dentist had chosen an easier treatment route by extracting several of the plaintiff's teeth rather than by trying to restore them, despite the possibility that extraction could result in the plaintiff's losing more teeth).

Here, the medical record substantiates that Dr. Cuevas assessed Plaintiff's dental needs when he saw him on May 13, 2019. *See* ECF No. 66 at 46–53; *see also* ECF No. 67-3 ¶ 10. No evidence suggest that Dr. Cuevas acted with any improper motives or incentives—or acted with a state of mind equivalent to culpable recklessness—when he treated Plaintiff and lowered his dental classification. Notably, Dr. Perry, who assessed Plaintiff's dental needs on February 11, 2020, also determined that tooth #29 was sensitive but did not require immediate attention. ECF No. 66 at 38–45.

At most, it is possible Dr. Cuevas could have been negligent in failing to recognize the serious or emergent nature of Plaintiff's dental conditions or by lowering his dental classifications, but "mere medical malpractice is not tantamount to deliberate indifference," "culpable recklessness, i.e., . . . a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (quoting *Hathaway*, 99 F.3d at 553).

### 2. Delay Due to Alleged Improper HSR Handling

No evidence suggests that Grievance Coordinator Walker acted with a conscious disregard to Plaintiff's serious dental needs when she returned his HSR with an instruction to submit it directly to the dental department. *See Mattison v. Bushey-Calley,* No. 20-1120-PR, 2022 WL 2275851, at *2 (2d Cir. June 23, 2022) (summary order) (concluding that plaintiff failed to show

evidence that medical provider, who reviewed plaintiff's grievances and medical records but did not examine him, was actually aware of and disregarded a substantial dental risk). Nor does Plaintiff provide evidence to support an inference that Walker could have more efficiently processed his HSR to provide him more timely treatment. *See Davis v. Furtick*, No. 3:21-CV-648 (SVN), 2022 WL 3681558, at *6 (D. Conn. Aug. 25, 2022) (dismissing claims against defendant Walker related to Plaintiff's respiratory issues where there was no indication that she could have provided him with more timely treatment or provision of his medication); *Blaine v. Burnes*, No. 3:20-CV-1039 (KAD), 2020 WL 5659101, at *7 (D. Conn. Sept. 23, 2020) (dismissing claim against defendant where alleged facts failed to suggest that he had an ability to ensure Plaintiff was provided with certain medical treatment).

Even if Plaintiff could assert a cognizable Eighth Amendment claim on the merits against Walker, however, such a claim would fail for another reason: Plaintiff has not demonstrated Defendant Walker's personal involvement in any alleged constitutional violation. As for personal involvement, in her role as a grievance coordinator, Walker had no direct involvement with Plaintiff's dental treatment. *See Tangreti v. Backmann*, 983 F.3d 609, 618 (2d Cir. 2020) (explaining that to bring a claim against a supervisory official, a plaintiff must demonstrate personal involvement). Even if Plaintiff could demonstrate personal involvement, Plaintiff cannot assert a constitutional violation based on his dissatisfaction with the grievance review process. *See Hinton v. Pearson*, No. 3:21-CV-863 (MPS), 2021 WL 4521994, at *8 (D. Conn. Oct. 4, 2021) (citing *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018)) (explaining that an inmate has no constitutional right to review of a grievance in a "timely" or "proper" manner). For these reasons, Plaintiff cannot assert an Eighth Amendment claim against Defendant Walker.

In sum, the record affords no reasonable inference that either Dr. Cuevas or Grievance

11

Coordinator Walker acted with deliberate indifference to Plaintiff's serious medical needs. Thus, the Court concludes that no reasonable jury could determine that either Dr. Cuevas or Grievance Coordinator Walker violated the Eighth Amendment by acting with deliberate indifference to Plaintiff's serious dental needs, and grants summary judgment in these Defendants' favor.

### B. Treatment for Asthma and COPD

The Court also finds that Plaintiff cannot sustain an Eighth Amendment claim against Nursing Supervisor Furtick for deliberate indifference to his COPD and asthma because she had no personal involvement in Plaintiff's treatment.

As noted above, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). As there is no special rule for supervisory liability, a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' . . . The violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Thus, at the threshold, Plaintiff must show that Defendant Furtick—a supervisory medical staff member—had direct personal involvement in providing or failing to provide him with medical treatment or in delaying his medical treatment for his asthma and COPD.

Plaintiff complains that Furtick failed to respond to his inmate requests. ECF No. 81-1 at 5. But "a defendant's 'mere receipt of a letter or grievance, without personally investigating or acting [thereon], is insufficient to establish personal involvement.'" *Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (alterations in original) (quoting *Burns v. Fischer*, No. 13-CV-486 (LEK/CFH), 2014 WL 1413387, at *5 (W.D.N.Y. Feb. 3, 2014)).

To demonstrate Furtick's personal involvement, Plaintiff has submitted as an exhibit his inmate request dated August 11, 2019, requesting several prescriptions refills (including Advair) that he had already written to the pharmacy about on the same date. Pl.'s Ex. 5, ECF No. 81-6 at 2. Furtick advised Plaintiff to submit another request if he did not receive his refills. *Id.* This evidence merely indicates that Furtick responded to an inmate request from Plaintiff, but it does not suggest that she conducted any investigation or action on the request; that she had a professional duty to order inmate prescription refills; or that she had any relevant clinical interactions with Plaintiff. *See* Defs.' L.R. 56(a)1 St. ¶¶ 19–20. As Defendants explain, "Ms. Furtick had a supervisory role by design. She is an administrator, not a medical provider." ECF No. 67-1 at 13 (citing Furtick Decl., ECF No. 67-5 ¶ 6). Furtick further explains that her duties involved purely supervisory functions like payroll, scheduling, ordering supplies, and supervising staff; she had no authority to overrule medical decisions. ECF No. 67-5 ¶¶ 6–7. Plaintiff has submitted no evidence to the contrary, and the record does not reflect that Furtick was personally or directly involved in allegedly delay of any medical treatment.[6]

Finally, Plaintiff asserts that Furtick had a duty under DOC Administrative Directive 8.1 to communicate with DOC custody staff regarding his requests for extra recreation and exercise for his respiratory conditions. ECF No. 81-1 at 5. But "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, No. 3:18-cv-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citing *Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir.

---

[6] Plaintiff has also submitted an inmate request to Nursing Supervisor Furtick requesting an exercise pass, but it does not show a response. ECF No. 81-14 at 1. He also submits grievance forms concerning his need for exercise to assist with his respiratory condition that show responses from Walker and Burns, rather than Furtick. *Id.* at 3–4. This evidence fails to support any inference that Furtick had any personal involvement with his request to exercise because none of the requests indicate that Furtick investigated or even responded to these requests.

2011)). Further, no record evidence supports a reasonable inference that Furtick had direct involvement in any alleged delay in Plaintiff's medical treatment for his asthma or COPD. The only evidence demonstrating Furtick's involvement is Plaintiff's grievance from August 11, 2019. However, as the Court has explained, not only did Furtick respond to Plaintiff's grievance by telling Plaintiff to write again if he did not receive his medication, but there is no evidence or indication that Furtick had any additional duty to order refills or that she involved herself in investigating Plaintiff's request.

Accordingly, the Court concludes that no reasonable juror reviewing the present record could determine that Nursing Supervisor Furtick violated Plaintiff's Eighth Amendment rights by acting with deliberate indifference to his medical needs for his asthma and COPD. Summary judgment in favor of Furtick is therefore warranted.

### IV.    CONCLUSION

For the foregoing reasons, the motion for summary judgment is GRANTED as to all remaining claims. As the Court has found for Defendants on the merits of the Eighth Amendment claims, it does not reach their alternative argument of qualified immunity.

The Clerk is instructed to enter judgment for Defendants and to close this case.

**SO ORDERED** at Hartford, Connecticut, this 29th day of February, 2024.

                                    */s/ Sarala V. Nagala*
                                    SARALA V. NAGALA
                                    UNITED STATES DISTRICT JUDGE